**IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CITIZENS COAL COUNCIL**<br>**130 Friend Road**<br>**Washington, PA  15301** | ) <br> ) <br> ) <br> ) |
| **and** | ) <br> ) |
| **APPALACHIAN VOICES**<br>**589 West King Street**<br>**Boone, NC 28607** | ) <br> ) <br> ) <br> ) |
| **and** | ) <br> ) |
| **SIERRA CLUB**<br>**2101 Webster St., Suite 1300**<br>**Oakland, CA 94612** | ) <br> ) <br> ) <br> ) <br> ) |
| **Plaintiffs-Petitioners,** | ) <br> ) |
| **v.** | ) <br> ) |
| **DOUG BURGUM, in his**<br>**official capacity as**<br>**Secretary of the Interior**<br>**1849 C Street N.W.,**<br>**Washington DC 20240**, | ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| **Defendant.** | ) |

**PETITION FOR REVIEW AND COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF**

## Introduction

1. This civil action challenges the February 19, 2026, final action of Doug Burgum, Secretary of the Interior (the "Secretary"), promulgating regulations pursuant to the Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. §§ 1201-1328 ("SMCRA").

2. The regulations challenged herein were published on February 19, 2026, at 91 *Federal Register* 7835 – 7855, and while captioned "*Rescission of the 'Ten-Day Notices and Corrective Action for State Regulatory Program Issues' Rule, Issued April 9, 2024*," ("2026 TDN Rule") both purported to rescind the April 9, 2024 Ten-Day Notices Rule ("2024 TDN Rule"), and to "replac[e] it, in large part, with the rule titled '*Clarification of Provisions Related to the Issuance of Ten-Day Notices to State Regulatory Authorities and Enhancement of Corrective Action for State Regulatory Program Issues,*" that had previously been adopted on November 24 2020 (the "2020 TDN Rule") and had later been substantially repudiated and amended by the 2024 TDN Rule.

3. The Secretary's action in promulgating the 2026 TDN Rule was final agency action that is arbitrary, capricious, and otherwise inconsistent with law in that it unlawfully modified important provisions of the Secretary's prior rules governing the ten-day notice ("TDN") process and issuance of ten-day notices ("TDNs") to state regulatory authorities regarding alleged violations of SMCRA, the Secretary's regulations, provisions of the approved state regulatory programs,

or permits issued thereto.

4.  The text of the statute both authorizing and mandating issuance of TDNs is at 30 U.S.C. 1271(a)(1), providing in pertinent part that:

> Whenever, on the basis of any information available to him, including receipt of information from any person, the Secretary has reason to believe that any person is in violation of any requirement of this Act or any permit condition required by this Act, the Secretary shall notify the State regulatory authority, if one exists, in the State in which such violation exists. If no such State authority exists or the State regulatory authority fails within ten days after notification to take appropriate action to cause said violation to be corrected or to show good cause for such failure and transmit notification to the Secretary, the Secretary shall immediately order Federal inspection of the surface coal mining operation at which the alleged violation is occurring unless the information available to the Secretary is a result of a previous Federal inspection of such surface coal mining operation.

30 U.S.C. 1271(a)(1)(Emphasis added).

5. Congress enacted this provision as part of "a nationwide program to protect society and the environment from the adverse effects of surface coal mining operations," 30 U.S.C. § 1202(a).

6. In enacting SMCRA, Congress intended, among other things, to "assure that the rights of surface landowners and other persons with a legal interest in the land or appurtenances thereto are fully protected from such operations," and to "assure that surface coal mining operations are so conducted as to protect the environment," 30 U.S.C. § 1202(b) and (d).

7. Throughout the deliberative Congressional process that resulted in the enactment of SMCRA, and in the debates on the earlier surface mining bills, Congress repeatedly voiced concern over the need both for a federal "oversight" role and active role for citizens in enforcing the new law due to the historic propensity of states to under-regulate and under-enforce environmental constraints on coal mining. For example, in the House Committee Report on H.R. 11500, from where the current language of 30 U.S.C. 1271(a)(1) originated, the intent that OSMRE exercise oversight authority to assure that the provisions of SMCRA were fully enforced, is clearly stated. The corresponding Senate bill, S. 425, contained no provision for federal inspection and enforcement in non-imminent danger situations where the Secretary was acting in an "oversight" role, providing merely that the Secretary would notify the state regulatory authority, at which point the state was to proceed under the approved program. S. Rept. No. 93-402, 93rd Cong., 1st Sess. 17 (1973). The House provision, which prevailed at Conference and which contained language identical in relevant part to current 30 U.S.C. 1271(a)(1) reflected that skepticism:

> For a number of predictable reasons – including . . . the tendency of State agencies to be protective of local industry - State enforcement has in the past, often fallen short of the vigor necessary to assure adequate protection of the environment.
>
> * * * * *
>
> While it is confident that the delegation of primary regulatory authority to the States will result in fully adequate state

4

enforcement, the Committee is also of the belief that a limited Federal enforcement role as well as increased opportunity for citizens to participate in the enforcement program are necessary to assure that the old patterns of minimal enforcement are not repeated.

The mechanism fashioned by the Committee to meet the dual need of limited Federal enforcement oversight and citizen access is operative in both the interim period and after a State program has been approved. When the Secretary received information from any source that would give rise to a reasonable belief that the standards of the Act are being violated, the Secretary must respond by either ordering an inspection by Federal inspectors during the interim period, or, after the interim, notice to the States in the follow-up inspection that the State's response is inadequate.

H. R. Rept. No. 93-1072, at 111.

8.  It is apparent that Congress intended that a federal inspection adjunct to the issuance of a TDN would occur in *all* instances where the state had failed to take "appropriate" action, and that the state had a time-limited period in which to take action to cause the violation to be corrected (i.e. "appropriate" action). No limitation on the requirement for federal inspection based on the nature or root cause of the violation, is found in the law.

9.  This is underscored later in the same Committee Report:

(2) Upon receiving such information [giving rise to a belief in the Secretary that a violation was occurring], the Secretary must notify the State o[f] such violations and within ten days the State must take action to have the violations corrected. If this does not occur, the Secretary shall order Federal inspection of the operation.

*Id.* at 143 (Emphasis added).

5

10.     The 2020 TDN Rule, which is revived by the 2026 TDN rulemaking, made significant changes to long-standing agency interpretation and policy; and hewed a path repugnant to both the letter and spirit of the Surface Mining Control and Reclamation Act of 1977. The 2020 TDN Rule was the subject of a challenge filed in the case of *Citizens Coal Council et al. v. Haaland,* Civil Action No. 21-195 (D.D.C. 2021), which was dismissed on April 18, 2024, after promulgation of the curative 2024 TDN Rule by OSMRE. The 2026 TDN Rule both interposes additional actions and additional delay in the issuance of TDNs and the undertaking of federal inspection and enforcement action, and ignores and sidesteps the mandatory TDN requirement and process for entire categories of on-the-ground violations arising from isolated or systemic failures of the state regulatory authority to properly maintain, administer, and enforce SMCRA.  The 2026 TDN Rule is arbitrary, capricious, and wholly inconsistent with the plain and mandatory requirements of law, and most egregiously, threatens public health, safety, and the environment by allowing potential violations of SMCRA, federal and state regulations, and permit conditions to continue unabated for lengthy periods of time.  The 2026 TDN Rule, by rescinding the 2024 TDN Rule and restoring (with minor changes) the earlier 2020 TDN Rule, has acted in a manner fundamentally contrary to the letter and the intent of the 1977 law.

**Jurisdiction and Venue**

11.     This Court has jurisdiction over this action pursuant to 30 U.S.C. § 1276(a)(1) (judicial review of national rulemaking under SMCRA), as well as 28 U.S.C. § 1331(a) (federal question). This Court may issue a declaratory judgment and grant further relief pursuant to 30 U.S.C. § 1276(b) and 28 U.S.C. §§2201 and 2202. Plaintiffs have a right to bring this action pursuant to 30 U.S.C. § 1276(a)(1) and the final agency action is reviewable pursuant to 5 U.S.C. § 701 *et seq.* (Administrative Procedure Act) and 30 U.S.C. § 1276(a)(1) (SMCRA).

12.     Venue is proper in this Court under 28 U.S.C. § 1391(e) and 30 U.S.C. Sec. 1276(a)(1). With respect to challenges to national rulemakings under SMCRA, venue lies exclusively in this Court pursuant to 30 U.S.C. § 1276(a)(1).

13. There is a current and actual controversy between the parties to this action.

14. Plaintiffs have exhausted their administrative remedies.

15. Plaintiffs have satisfied the requirements of 30 U.S.C. 1276(a)(1) by having participated in the rulemaking process that produced the final 2026 TDN Rule challenged herein.

**Parties**

16. Plaintiff Citizens Coal Council ("CCC") is a nonprofit corporation existing under the laws of Pennsylvania. CCC is a nationwide association of

grassroots individuals who reside in or visit America's coalfields. CCC's mission is to protect resources, including the homes, farms, businesses, and water supplies of its individual members, through advocacy of full compliance with all environmental laws pertaining to coal mining, and in particular, through full and fair implementation of SMCRA.

17.  CCC's members include Vernon Haltom, who is the Executive Director of Coal River Mountain Watch, ("CRMW"), a nonprofit community group in Naoma, West Virginia. Incorporated in 1999, CRMW's mission is to stop the destruction of our communities and environment by mountaintop removal surface mining, to improve the quality of life in our area, and to help rebuild sustainable communities.  The Affidavit of Vernon Haltom ("Affiant Haltom"), attesting to his standing as a member of the Citizens Coal Council who has and intends to continue to utilize the TDN process as part of his current employment, is attached hereto as Exhibit 2.

18. Affiant Haltom and CRMW have  used the Ten-Day Notice ("TDN") process to assist in securing enforcement by the West Virginia Department of Environmental Protection ("WVDEP") of applicable mining laws, regulations, and permit conditions, and intend to continue utilizing the TDN process to seek federal oversight of site-specific violations at coal mines as CRMW learns of those violations, to protect its members and their communities from the harmful

8

impacts of coal mining.

19. Affiant Haltom and CRMW are adversely affected and harmed and have suffered and will continue to suffer injury from the 2026 TDN Rule that reinstates the unnecessary delays posed by the open-ended process of additional conferrals with state regulators, and that eliminates the availability of the TDN process for addressing permit defect-type violations.

20. Among the injuries that Affiant Haltom and CRMW will suffer if the 2026 TDN Rule is allowed to remain in place, are the cost and burden of expending additional resources utilizing the ten-day notice process, and of pursuing alternative means to address permit-defect type violations by state regulators, including pursuing actions before state regulatory bodies and state courts, where possible.  Additionally, Affiant Haltom's use and enjoyment of the coalfield environment will be damaged to the extent that violations of the law that are encountered remain unabated due to delays created by the 2026 TDN Rule.

21. Affiant Haltom is a member of the Citizens Coal Council ("CCC"), which has the authority to maintain this action on his behalf.

22.  CCC has associational standing on behalf of Vernon Haltom in this challenge to the 2026 TDN Rule.

23. CCC staff and members, including Affiant Haltom, have worked with impacted community members to utilize the ten-day notice process to address

SMCRA violations at coal mines, when those violations were not adequately addressed by the state regulatory authority. CCC also regularly informs people living near mines about various tools provided by Congress and available to them to address impacts from mining, including the ten-day notice process. The ten-day notice process is critical to the ability of CCC and its members like Affiant Haltom to ensure effective mining oversight by the federal Office of Surface Mining ("OSMRE") as contemplated by Congress and provided in 30 U.S.C. 1271(a)(1).

24. Plaintiff Appalachian Voices ("AV") is a regional nonprofit corporation incorporated in North Carolina. AV has around 8,600 members nationwide. AV has offices in North Carolina, Tennessee, Virginia, and West Virginia, and its programmatic work focuses on the Appalachian region, including parts of West Virginia, Virginia, Kentucky, North Carolina, and Tennessee. AV's mission is to protect the air, land, waters, and built and natural communities of Central and Southern Appalachia. It is critical to advancing the mission of AV to prevent negative impacts from coal mining to the water, land, and on residents in the Southern Appalachian region, and the TDN process is a critical tool in that work.

25. AV staff has worked with community members adversely affected by mining impacts to utilize the TDN process to address SMCRA violations at coal mines, when those violations were not being adequately and timely addressed by the state regulatory authority. AV also regularly informs people living near mines

about various tools provided by Congress and available to them to address impacts from mining, including the ten-day notice process. The TDN process is critical to the ability of AV and its members to ensure effective mining oversight by the OSMRE as contemplated by Congress.

26. Among those associated with AV who are adversely affected and aggrieved and have suffered injury in fact, within the meaning of applicable law, due to the final agency action complained of herein, is Willie Dodson, who is both a member and an employee of AV, working as the Coal Impacts Program Manager for that organization.  Willie Dodson has been working for years on issues associated with protection of the land and people affected by coal mining pollution in West Virginia, Virginia, Kentucky, and Tennessee. The Affidavit of Willie Dodson ("Affiant Dodson"), attesting to his standing as a member and employee of Appalachian Voices who has and intends to continue to utilize the TDN process as part of his current employment, is attached hereto as Exhibit 3.

27. Affiant Dodson has worked with colleagues and community members to develop and write citizen complaints for submittal to the Office of Surface Mining Reclamation and Enforcement and assisted in the development of such citizen complaints, seeking issuance of ten-day notices to state regulatory authorities to secure inspection and enforcement activity under the surface mining laws.  He and AV were relieved when OSMRE proposed and finalized the 2024 amendments to the TDN regulations, including the elimination of the unnecessary

11

delays posed by the open-ended process of additional conferrals with state regulators, and the restoration of permit defect-type violations as being among those subject to the TDN notification process. He and AV are harmed in their ongoing work, and Affiant Dodson is harmed in his use and enjoyment of the land, air, and water resources of the coalfield communities in which he and AV work, by the reinstatement of those delays and exclusions from the 2024 TDN Rule through the 2026 TDN Rule.

28. Plaintiff Sierra Club is a national nonprofit conservation organization incorporated in California, with more than 830,000 members and supporters nationwide. The Sierra Club maintains local chapters and members in each of the Appalachian states, including Kentucky, West Virginia, Virginia, Tennessee, and Pennsylvania; as well as in Alaska; the Illinois Basin; Colorado Plateau; Gulf Coast; Northern Rocky Mountains; and Great Plains. The Sierra Club is dedicated to exploring, enjoying, and protecting the wild places of the Earth; practicing and promoting the responsible use of the Earth's resources and ecosystems; educating and enlisting humanity to protect and restore the quality of the natural and human environment; and to using all lawful means to carry out these objectives. The Sierra Club has long worked to prevent the harm caused by mining coal across the United States, particularly in Appalachia and the West.

29. Among the members and employees of Sierra Club is Aaron Isherwood,

12

who is the Phillip S. Berry Managing Attorney with Sierra Club's Environmental Law Program.  The Affidavit of Aaron Isherwood ("Affiant Isherwood"), attesting to his standing as a member and employee of Sierra Club is attached hereto as Exhibit 4.

30.  Affiant Isherwood has been employed at the Sierra Club since 1999. Among other duties, he is responsible for managing and supervising the Sierra Club's litigation and other legal assistance and advocacy relating to coal mining in the United States, including managing the Sierra Club attorneys and outside counsel that represent Sierra Club in court and administrative forums.

31.  For the past two decades, much of Affiant Isherwood's work has included efforts to ensure that coal mine operators and the regulators comply with the Surface Mining Control and Reclamation Act (SMCRA), state mining statutes and regulations, and other applicable laws.

32.  Affiant Isherwood's work includes managing coal mining dockets on a range of issues and includes overseeing work by Sierra Club's attorneys in preparing, reviewing, and sending citizen requests for inspections to the Office of Surface Mining Reclamation and Enforcement (OSMRE) under SMCRA's ten-day notice provisions.

33.  Sierra Club has submitted ten-day notice requests and requests for citizen inspections regarding coal mines across the country, including in Virginia, West Virginia, Illinois, Ohio, Wyoming, and Alaska.

13

34.  Sierra Club intends to continue utilizing the ten-day notice process to seek federal oversight of site-specific violations at coal mines to protect Sierra Club members and their communities from the harmful impacts of unlawful coal mining operations, which the ten-day notice process is designed and intended to address.

35.  When Sierra Club sends a ten-day notice request and request for citizen inspection, the violations at issue frequently require a rapid response from regulators to prevent ongoing harm from becoming significant and imminent. For that reason, Sierra Club and its members are very concerned and harmed by the unnecessary delays created in the ten-day notice process under the 2026 TDN Rule. These changes add additional delays and steps to the process and introduce new opportunities for OSMRE to delay or deny citizen requests in ways that harm and will continue to harm the interests of the Sierra Club and our members who are harmed by unlawful coal mining operations.

36.  The ten-day notice requests Sierra Club has sent to OSMRE have included assertions of permit defect violations and other violations arising from site-specific actions or decisions by state regulators during the permitting review that manifest in site-specific damage. Sierra Club believes it is critically important that citizens be able to demand that OSMRE respond to this type of violation through the ten-day notice process. For that reason, Sierra Club is very concerned with and harmed by OSMRE's decision to exclude actions by state regulators from

the types of violations that can be addressed by and remedied through the ten-day notice process. Those exclusions will harm the Sierra Club and our members by allowing unabated violations to continue until if or when addressed through programmatic mechanisms.

37.  If OSMRE's 2026 TDN Rule changes remain in place, Sierra Club will have to expend additional financial and staffing resources when utilizing the ten-day notice process. Under the 2026 TDN Rule, Sierra Club will need to take additional steps, requiring the organization to expend additional time and resources, to ensure the process moves quickly and does not stall at the initial step allowing OSMRE to confer with state regulators.

38.  Under the 2026 TDN Rule, Sierra Club will also need to expend additional resources pursuing alternative means to address permit-defect violations by state regulators, including pursuing actions before state regulatory bodies such as partial or total program withdrawal, and in state or federal courts, where possible. This will cost additional funds in filing fees, other costs, and retainers for outside counsel, and will require additional Sierra Club staff time.

39.  Numerous individual CCC, AV, and Sierra Club members depend upon the TDN process to protect their interests – as residents of, or visitors to, America's coalfields – from damage as the result of violations of SMCRA caused by either the failure of the permittee to comply with the law, regulations, and the permit, or the failure of the state regulatory authorities to properly maintain,

15

administer, and enforce the approved program.

40.  CCC, AV, the Sierra Club, and their members are suffering and will continue to suffer injury in fact as the result of the Secretary's 2026 TDN Rule due to the additional delays and unlawful exemptions created by the rulemaking to the mandated notice, inspection, and enforcement requirements of Section 1271(a) of SMCRA.

41. CCC, AV, and the Sierra Club have each utilized the TDN notice process on behalf of themselves and their members to assure the timely correction of violations of SMCRA, including violations caused by failure of permittees to follow applicable regulations and issued permits, violations caused by site-specific failures by state regulators to follow the statute and applicable regulations, and because of systemic failures of the state regulatory authorities to properly administer, maintain, and enforce SMCRA and the approved state programs in the permitting process, resulting in on-the-ground violations and damage to the environment.  Each organization will continue to use the process on an ongoing basis as the need arises and are aggrieved by the impediments created in the final TDN rule to immediate notification to state regulatory authorities and prompt correction of violations through appropriate action by state regulatory authorities or by OSMRE in the absence of timely state action or good cause for inaction.

42.  CCC, AV, and the Sierra Club bring this action on behalf of their

members as well as themselves. Plaintiffs have organizational standing to sue on their own behalf, as well as representational standing to represent the interests of their members, including but not limited to those members whose affidavits are annexed to this Complaint and are incorporated herein by reference as if fully set forth in the Complaint.

43. The interests of CCC, AV, and the Sierra Club and their members are squarely within the zone of interests intended to be protected by the Administrative Procedure Act and SMCRA, and the harm they have and will suffer, occasioned by the 2026 TDN Rule is redressable through a grant of the relief sought herein, which is a declaration that the Rule is arbitrary, capricious, and otherwise inconsistent with law and vacatur of the 2026 Final Rule.

44. In accordance with 30 U.S.C. 1276(a)(1), judicial review of the final action of the Secretary in publishing national rules or regulations, is available by the U.S. District Court for the District of Columbia by filing a Petition for Review within sixty days "from the date of such action" or thereafter if the petition is based solely on grounds arising after that sixtieth day.

45. The 2026 TDN Rule was published on February 19, 2026, at 91 *Federal Register* 7835. The rule "is effective on March 23, 2026." *Id.* at 7835 col. 1. This Petition for Review is timely filed within the meaning of 30 USC 1276(a)(1).

46.  30 U.S.C. 1276(a)(1) provides that a petition for review of a national rulemaking "may be made by any person who participated in the administrative proceedings and who is aggrieved by the action of the Secretary." Plaintiff organizations CCC, AV, and Sierra Club, on behalf of the organizations and their members, participated in the rulemaking procedures which resulted in the Secretary's promulgation of the 2026 TDN Rule.

47. Each of the Plaintiff organizations and their members have satisfied the requirements pursuant to 30 U.S.C 1276(a)(1) to maintain this action, as they participated in the administrative proceedings and are adversely affected and aggrieved by the 2026 TDN Rule adopted by the Secretary.

48. Doug Burgum is the Secretary of the Interior who approved the agency rule challenged herein, and is named Defendant in his official capacity, in accordance with 30 U.S.C. 1276(a)(1).

49. The Secretary of Interior, whose official place of residence is Washington, D.C. is responsible for implementing all statutes, regulations, and programs administered by the United States Department of the Interior and its constituent agencies.  The Secretary, acting through the Office of Surface Mining Reclamation and Enforcement ("OSM"), has a statutory mandate to promulgate national regulations implementing SMCRA, including regulations that implement the ten-day notice process.  The Secretary is also charged with the responsibility of

18

complying with the Administrative Procedure Act.

**Facts**

50. On June 16, 2025, the Secretary, acting through the Office of Surface Mining Reclamation and Enforcement, published a proposed rulemaking pursuant to SMCRA, proposing to rescind the to rescind the ''Ten-Day Notices and Corrective Action for State Regulatory Program Issues" Rule adopted on April 9, 2024. 90 *Federal Register* 25174 – 25180.

51. On July 16, 2025, prior to the close of the public comment period, Plaintiffs CCC, AV, and Sierra Club submitted a joint 86-page set of comments regarding the proposed 2026 TDN Rule electronically via *www.regulations.gov,* RIN 1029–AC89, Docket Number OSM-2025-0018.  A copy of the electronic receipt evidencing compliance with this requirement of 30 U.S.C. 1276(a)(1) is attached hereto as Exhibit 5 and is incorporated herein by reference.

52. Among other things, CCC, AV and the Sierra Club commented that adoption of the numerous proposed rule changes that would with minor changes reinstate the 2020 TDN Rule (previously challenged by the commenters in the 2021 litigation), would be arbitrary, capricious, or inconsistent with SMCRA, the Administrative Procedure Act, and the National Environmental Policy Act.

53. Despite the comments that CCC, AV, and the Sierra Club submitted, the

Secretary on February 19, 2026, promulgated a final rule that adopted the provisions that CCC, AV, and the Sierra Club had opposed, rescinded the 2024 TDN Rule, and replaced it, in large part, with the rule titled, ''Clarification of Provisions Related to the Issuance of Ten-Day Notices to State Regulatory Authorities and Enhancement of Corrective Action for State Regulatory Program Issues,'' which was first adopted on November 24, 2020 (the ''2020 Rule'').

54. This Petition for Review and Complaint for Declaratory and Injunctive Relief followed, and is timely filed, falling within sixty (60) days of the publication of the 2026 TDN Rule and well within sixty (60) days of the effective date of the 2026 TDN Rule.

## Claims for Relief

### Count I

55. Plaintiffs incorporate by reference as if fully set forth below, Numerical Paragraphs 1-54 of this Complaint.

56. The Secretary's February 19, 2026, TDN rulemaking violates SMCRA and the Administrative Procedure Act, and is arbitrary, capricious, and otherwise inconsistent with law in numerous respects, including but not limited to the following:

a. In direct violation of the plain language of 30 U.S.C. 1271(a)(1), which mandates that the Secretary, upon receipt of information from any person or on the

basis of information available to him, shall notify the state regulatory authority and provide ten (10) days for that state regulatory authority to "take appropriate action to cause the violation to be corrected or to show good cause for such failure," the final TDN rule unlawfully interposes a new step prior to issuance of the TDN. Under the 2026 TDN rule, the Secretary would delay issuance of a TDN in order to allow the state to transmit information that is by definition *not* available to the Secretary as contemplated by SMCRA but which would subsequently be produced and *made* available, thus indefinitely postponing the commencement of the mandated TDN process and delaying the state regulatory authority obligation to take action or show good cause. The purported "clarification" in fact creates a "pre-TDN" process inconsistent with both the Act and long-standing interpretation of Section 521 by the agency prior to the 2020 TDN Rule. The 2026 TDN rule is inconsistent with the plain language of 30 U.S.C. 1271 in attempting to interject the undefined concept of "readily" as a modifier to the term "available information" as a justification for delaying issuance of a TDN indefinitely so as to allow transmittal of information by the state regulatory authority.

b. The final TDN rule unlawfully creates an arbitrary and unlawful distinction nowhere found in SMCRA, between and among violations that are the result of a site-specific failure of a permittee to comply with permit conditions and obligations, and those violations that are the result of a case-

21

specific or systemic failure by a state regulatory authority to properly maintain, administer, and enforce the approved state program with respect to issuance or compliance supervision of a mining operation. The distinction is wholly without support in the Act, is counter to decades of agency interpretation and practice, is arbitrary in that it would apply where numerous violations are the result of programmatic failures of the regulators that manifest through on-the-ground violation.  The flawed distinction is grounded in a distinction created by administrative fiat allowing actual observed violations of the Act that result from a state's misadministration of the Act and approved program to continue unabated for an indefinite period while the Secretary consults with the state regulatory authority under the newly crafted interim 30 C.F.R. 733 process regarding the problem.  All observed violations of the Act, the federal regulations, the approved state program, and the permit, are required to be immediately subject to enforcement action upon discovery. Congress, in 30 U.S.C. § 1271(a), directed OSM to take action to address violations by "any person," and the Secretary is without authority to exempt state regulators from the definition of "any person."  30 U.S.C. 1271(a) and (b) are not alternatives available to the Secretary for responding to on-the-ground violations; rather, pursuant to 30 U.S.C. 1271(a), each violation must be subject to federal inspection and enforcement where the state has failed to take "appropriate action" to cause the violation to be corrected or to show "good cause" for failure

22

to do so, and where the violation is the result of the State failure to enforce such State program or any part thereof effectively, the Secretary is obligated to utilize the 30 U.S.C. 1271(b) process to address that failure.

c.  In direct violation of 30 U.S.C. 1271(a), the Secretary proposes to make discretionary what is a mandatory obligation to issue a federal enforcement order where an observed violation of the Act, federal or state regulation, or approved state program is determined by the Secretary to exist. Contrary to the suggestion that under revised 30 C.F.R. 733.12(d) that OSMRE "may still take a direct site-specific enforcement action," 85 Fed. Reg. 75151, the agency is mandated by SMCRA to do so in all cases.

d. The 2026 TDN rule impermissibly attempts to amend 30 U.S.C. 1271(a) by modifying "available" to mean "readily available," and then defining "readily available" to include information supplied by third parties subsequent to receipt of a citizen complaint alleging a violation.  The final TDN rule is unlawful and inconsistent with SMCRA and introduces ambiguity where none exists.

e.  The final TDN rule creates out of whole cloth an "enhancement to the existing 30 C.F.R. Part 733 process" that is inconsistent with the provisions of 30 U.S.C. 1271 and which allow the Secretary and state regulatory authority to sidestep the statutory requirements of 30 U.S.C. 1271(b) in favor of "addressing state regulatory program issues early and promptly resolving the issues" prior to or

23

in lieu of initiation of the current 30 C.F.R. 733 process mandated by SMCRA.  If the Secretary wishes to rewrite the clear provisions of 30 U.S.C. 1271(a) and (b), a proposal to Congress rather than an overreaching final rulemaking, is the appropriate vehicle.  The interposing of new procedures prior to federal action pursuant to 30 U.S.C. 1271(b) is contrary to law and in excess of the agency's authority.  The process mandated by Congress does not admit of the creation by the Secretary of a new intermediate process for resolving a ''State regulatory program issue'' short of notification of intent to commence proceedings to withdraw all or part of a State regulatory program under 30 U.S.C. 1271(b).

f.  The replacement of "shall" with "will" or "must" impermissibly rewrites the plain language of SMCRA.  The term "shall" as utilized in SMCRA is not ambiguous, and the legislative history makes clear that the term is mandatory.  The agency is without authority to amend, vitiate, or modify the language of the statute.

g.  Removal of the phrase "if true" reflects a substantive change in the agency interpretation of its obligation to act when receiving information from a citizen's complaint that *if true* would constitute a violation.  The agency has failed to provide a sufficient and reasoned basis for rejection of the contemporaneous interpretation of the statutory requirement, and in failing to do so has acted arbitrarily and capriciously.

h.  The promulgation of the definitions of "action plan" and "state regulatory

program issue," as proposed to be utilized in the TDN final rule, are arbitrary, capricious, or otherwise inconsistent with law inasmuch as they are intended to support implementation of a new intermediate step prior to 30 U.S.C. 1271(b) that is inconsistent with SMCRA.

i.  The interpretation in the final TDN rule that "appropriate action to cause the violation to be corrected" could include actions *other than* issuance of a notice of violation by either the state regulatory authority or OSMRE, is inconsistent with law and with long-standing agency interpretation of the Act and its obligations thereunder, and is arbitrary, capricious, and otherwise inconsistent with law.

j. The final rule is inconsistent with law in creating exceptions, allowing extensions and substituting procedures from elsewhere in the statute in lieu of the plain and compelling statutory language of 30 U.S.C. 1271(a) that requires that "upon receiving" information giving rise to the belief that a violation was occurring, a ten-day notice must be sent and the State must take action to have the violations corrected, or a federal inspection "shall" be ordered, without exceptions, extensions, excuses, "action plans," substitution of Section 521(b) procedures for federal inspection and enforcement action in the face of a possible violation, or "informal review" process for states to appeal TDN issuance. "Congress…does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions -- it does not, one might say,

25

hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468, 121 S. Ct. 903, 909-10 (2001).  If Congress had intended to make the TDN process available only for *some* potential violations, and only where *some* reasons existed for the violation (but not state regulatory failures or permit defects), or to allow non-enforcement responses as sufficient to constitute "appropriate" action in *some* cases, it would have so provided.  In the absence of such authority, the agency is without the power to do so.   "A decision of such magnitude and consequence rests with Congress itself, or an agency acting pursuant to a clear delegation from that representative body." *West Virginia v. EPA,* 597 U.S. 697, 735 (2022).  OSMRE has no such delegation, and as such, the proposals to cabin and delay the TDN process are *ultra vires* and inconsistent with law.

k. By resurrecting the 2020 TDN Rules which interposed additional delay in taking federal inspection and enforcement action, and by sidestepping the mandatory TDN process where violations are more widespread due to systemic failures of the state regulatory authority to properly maintain, administer, and enforce SMCRA as it is obligated by law and regulation, the TDN rulemaking is arbitrary, capricious, inconsistent with law, and most egregiously, threatens public health, safety, and the environment by allowing potential violations of SMCRA, federal and state regulations, and permit conditions to continue unabated for lengthy periods of time.

l. The final rule unlawfully reinstated the requirement from the 2020 TDN Rule in 30 C.F.R. 842.11 and 842.12 regarding the "reason to believe determination" in order to state that, before issuing a notification to State regulatory authority when a possible violation exists, OSMRE will collect and consider any "information readily available to him or her, from any source, including any information a citizen complainant or the relevant State regulatory authority submits[.]"  The default back to the 2020 TDN Rule, which allowed "information that a State regulatory authority may choose to provide, before OSMRE issues a notification to a State regulatory authority." 85 *Federal Register* 28905 (May 14, 2020)(Emphasis added), restores the delay in OSMRE evaluation and determination on whether the information it possesses gives "reason to believe," instead contemplating communication with and collection of additional information from a state regulatory authority *after* a citizen-initiated request to OSMRE but *before* issuance of a TDN in response to that citizen request – thus reinstating an open-ended pre-notice process that was rejected by the Secretary in 2024. The change violates the plain language and intent behind Section 521(a) of the Act and rested on the specious and unfounded claim that the term "reason to believe" in existing regulation is somehow ambiguous "as to what information OSMRE may consider when determining whether OSMRE has 'reason to believe' that a permittee is in violation of applicable requirements." 85 *Federal Register* 28906.  Adding

27

"information readily available to him or her, from any source, including any information a citizen complainant or the relevant State regulatory authority submits" muddies rather than clarifies the information on which OSMRE is required by law to make the determination.

m. The final rule reinstates a requirement that a person seeking a federal inspection "notify both the OSMRE authorized representative and the State regulatory authority, if any, which better aligns the regulations with the statutory structure of SMCRA and the goals of cooperative federalism." 90 *Federal Register* 25175.  This description inaccurately suggests that concurrent notice is what is being proposed, when in reality, the language proposed for 30 CFR 842.12(a) would require **prior notice** to the state regulatory authority and additional delay:

> The statement must also set forth the fact that the person has notified the State regulatory authority, if any, in writing, of the existence of the possible violation, condition, or practice, and the basis for the person's assertion that the State regulatory authority has not taken action with respect to the possible violation.

90 *Federal Register* 25180.

The proposal is entirely without statutory support in the federal Act, runs contrary to the legislative history of the law, departs from historic practice of the agency, and contradicts the process established by Congress by adding on new steps and procedures that contradict the plain language of the Act.  Had Congress intended to require notification to the state regulatory authority as a

28

prerequisite to 30 U.S.C. 1271(a), it would have done so, and the agency is acted contrary to law in creating out of whole cloth a new hurdle to timely response to potential violations.

n. The 2026 Rule is otherwise arbitrary, capricious, and inconsistent with law in failing to accord with the statutory mandates that (1) the TDN process is available to be used to address all potential violations of the Act, the Secretary's regulations, the approved state regulatory program, or the issued permit, whether the violation is the result of the actions or inaction of the permittee or operator, or results from an individual or programmatic failure of the state regulatory agency in the issuance of the permit or the interpretation or application of its approved regulatory program; and (2) that the process of withdrawing a state regulatory program and substitution of all or part of a federal regulatory program, is not a surrogate for the interim issuance of a TDN and follow-up federal regulatory action with respect to any extant violation. Whether the violation is the result of a SRA failure to maintain, administer, or enforce a program or arises from a permittee's failure to follow the permit and the applicable regulations, the TDN *always* issues. And the TDN *always* issues to the state regulatory authority, whether that SRA is considered a "person" or not, and communicates the existence of a potential violation that must be subject to federal inspection and enforcement action where the state fails to inspect and take action to cause the violation to be corrected. It is *never* "good

29

cause" that a state regulation or state-issued permit does not consider the violation to be one, if that determination is inconsistent with the federal Act or Secretary's regulations, and it is never "appropriate action" where it does not cause the violation to be abated.

o. The TDN Rule violates the plain language of the Act and is contrary to the expressed intent of Congress, in resurrecting the artificial distinction drawn in the 2020 TDN Rule between violations caused by "permit defects" and those caused by a failure of the operator or permittee to *follow* the permit. With absolutely no statutory basis for creating and restoring the distinction, and in a manner wholly inconsistent with the long-held interpretation of the agency, the agency purports to base the distinction between violations caused by "permit defects," which will be handled through the 30 U.S.C. 1271(b) process, and those which are caused by permittee or operator failures. Using an strawman argument concerning the definition of "person," the Rule distracts from the clear mandate of the Congress – all violations, when observed, will be written, and federal inspection and enforcement action is required for all violations, whether they result from a state failure in permit issuance, a state misapplication of the approved program regulations, or any other programmatic or "one-off" failure. The 30 U.S.C. 1271(b) process is no surrogate for 30 U.S.C. 1271(a), and the "person" who is violating the Act and is subject to the enforcement action is the permittee or operator, regardless of whether the

violation that has been created resulted from a failure to follow a state-issued permit, or resulted from following a flawed state-issued permit.  The plain language of the Act demands that "any" violation of the Act be subject to the TDN process and appropriate enforcement action regardless of the reason for the violation.  There is no off-ramp for violations of 30 U.S.C. 1271(a) arising from systematic failures to maintain, administer, and enforce an approved state program. The 2026 Rule violates the plain language of the Act, vitiates Congressional intent, and eliminates a key component of a framework designed to address a range of state agency failures – from individualized, site- specific failures, to programmatic failures.  It also results in the absurd outcome that the State could refuse to take appropriate action until the point where the on-the-ground violation worsens to an imminent-harm situation, in which case the proposed rule recognizes that federal enforcement action would be necessary.

p. The 2026 Rule violates the Act by changing the definitions of "appropriate action" and "good cause," as used in 30 C.F.R. 842.11, and revise the regulations pertaining to 30 C.F.R. Part 733.  Congress was clear and unambiguous in mandating that unless a state took action to cause the violation to be abated within 10 days of notification, OSMRE is to conduct an inspection and take enforcement action.  The law is clear that in **no** circumstance is an on-the-ground violation of the law to be allowed to continue unabated while the state and federal agencies discuss, debate, and develop plans for resolving

31

systemic problems with the state administration of an approved regulatory program.  Immediate action to cause the violation to be abated must occur as an interim response, and federal inspection and enforcement action must be taken within ten days of the notice unless the state regulatory authority has done so. An extant violation, and the attendant damage to land, air, or water resources, and to the public, is not allowed to continue unabated simply because there are multiple violations of the same nature across multiple mining operations due to a common state permitting or program implementation failure.  While correcting the underlying state programmatic failure may take more time, and may result in initiation of the 30 U.S.C. 1271(b) / 30 C.F.R. Part 733 process if it is not resolved, 30 U.S.C. 1271(a) applies to all violations, including those resulting from a state failure to enforce or administer an approved program properly, and initiation of 30 U.S.C. 1271(b) processes is not a surrogate for or alternative to issuance of a TDN, followed by state resolution of the violation or federal inspection and enforcement in the absence of state response within ten-days of notification.

q.  The 2026 Rule is contrary to law in allowing development of an "action plan" to constitute "appropriate action," without requiring that all extant violations to be subject to an enforcement order or orders and abated in accordance with the time frames outlined under the enforcement provisions of the Act.  A violation that is caused by an individual failure of a permittee is

required to be subject to an enforcement action with an abatement period, followed by increasingly stringent enforcement action in the case of a failure to abate.  Nothing in the Act allows a different response where there are numerous violations by a permittee at one mine site, or one violation by a permittee at numerous mine sites, or because that violation is the result of a state permitting error or other program defect.  Nothing in the Act suggests or authorizes the allowance of a continued violation without an obligation to abate that violation pursuant to a notice of noncompliance during the period of development of a corrective action plan, just as nothing in 30 U.S.C. 1271(a) exempts violations caused by state programmatic or individual failures to remain unabated due to initiation of 30 U.S.C. 1271(b) proceedings.

r.  The Secretary acted in a manner that is arbitrary, capricious, and inconsistent with law in relying on factors that Congress did not intend for it to consider, in failing to consider the effects of the rule changes on the coalfield citizens and environment, and has failed to off explanations for decisions that are consistent with the Act and evidence before the agency.

s.  Reliance on Executive and Secretary's Orders and on agency "policy" that is repugnant to the announced purposes of the Act, is arbitrary, capricious, and *ultra vires*.

t.  The Secretary has also failed to offer reasonable and adequate justifications for several reversals of long-standing agency interpretations of the

Act. The 2026 TDN Rule is arbitrary and capricious in altering the existing standards applicable to the Secretary's "reason to believe" finding and unlawfully reversing OSMRE's long-standing and consistent interpretations of SMCRA's ten-da-notice requirement while failing to acknowledge earlier contrary interpretations, to provide reasonable explanation for changing positions, and without providing or analyzing available relevant data.

u. The 2026 TDN Rule, by proposing to respond to violations caused by state failure to maintain, administer, and enforce the approved state program through programmatic procedures rather than through federal enforcement action against the violation, is inconsistent with the Act and Congressional intent, and will create an enormous loophole leading to absurd results and environmental damage intended to be prevented by Congress.

v. The 2026 TDN Rule is otherwise arbitrary, capricious, and inconsistent with law.

## Count II

57. Plaintiffs incorporate by reference as if fully set forth below, Numerical Paragraphs 1-56 of this Complaint.

58. The Secretary acted arbitrarily, capriciously, and in a manner otherwise inconsistent with law, in failing to conduct an environmental analysis of the proposed rule in a manner consistent with the requirements of the National

34

Environmental Policy Act (NEPA) and regulations of the Council on Environmental Quality and of the Department of the Interior. Use of a "categorical exclusion" to avoid the human health, safety, and environmental implications of interposing delay in both the exercise of federal authority under 30 U.S.C. 1271(a) and 30 U.S.C. 1271(b), is inconsistent with the agency's obligations under NEPA. Despite the characterization of this substantive rulemaking as being one that is "administrative and procedural" in nature, the effect of making discretionary federal enforcement action for violations caused by "state regulatory program issues," coupled with delays created in issuance of TDNs and in commencement of 30 U.S.C. 1271(b) procedures, will allow violations to go unabated for indefinite periods of time. The potential substantive impacts on abatement of violations occasioned by these substantive changes to existing regulations required development of environmental documentation under NEPA, and the failure to have done so is arbitrary, capricious, and otherwise inconsistent with the Secretary's obligations under NEPA.

59. The rescission of the 2024 TDN Rule is a major federal action significantly affecting the human environment and cannot be lawfully categorically excluded from NEPA analysis and documentation.

## Conclusion And Prayer for Relief

Wherefore, for the reasons stated above, Plaintiffs CCC, AV, and the Sierra Club

respectfully request that this Court:

1. Accept jurisdiction over this cause;

2. Determine and declare that the 2026 TDN Rule provisions challenged herein as identified in this Petition for Review and Complaint, including Numerical Paragraph 56, are arbitrary, capricious, otherwise inconsistent with law and violate SMCRA;

3. Declare that the portions of the 2026 TDN Rule identified in Paragraph 56 of this Petition for Review and Complaint are arbitrary, capricious, an abuse of discretion, and are otherwise inconsistent with law, in violation of the Administrative Procedure Act;

4. Enter an order expressly vacating the portions of the 2026 TDN Rule identified in Paragraph 56 of this Petition for Review and Complaint;

5. Enjoin the Secretary and those acting under his authority from implementing the portions of the 2026 TDN Rule identified in Paragraph 56 of this Petition for Review and Complaint in any manner whether by rule or by policy;

6. 5. Determine and declare that the failure of the Secretary to have developed, published, and finalized environmental documentation under the National Environmental Policy Act appropriate to the substantive changes effected by the regulation and the potential for adverse impact on the human environment, was arbitrary, capricious, and otherwise inconsistent with law

36

and requires that the rulemaking action be set aside and vacated;

6. Award Plaintiffs their costs, disbursements, and reasonable attorneys' fees; and

7. Grant such other relief as the Court deems just and appropriate.

Dated: April 20, 2026                         Respectfully submitted,


                                              */s/ Tom FitzGerald*
                                              Tom FitzGerald
                                              Kentucky Resources Council, Inc.
                                              (DC Bar ID: KY 0001)
                                              1600 Dundee Way
                                              Louisville, Kentucky 402025
                                              Telephone: (502) 551-3675
                                              Email: fitzkrc@aol.com


## CERTIFICATION

I hereby certify that a true and correct copy of this complaint and attachments were served this 20th day of April 2026 through the Electronic Filing System and issuance of Summons in accordance with applicable rules.


                                              */s/ Tom FitzGerald*
                                              Tom FitzGerald