**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

<table>
<tr><td>

CITIZENS COAL COUNCIL, et al.,

            Plaintiffs-Petitioners,

v.

DOUG BURGUM, in his official capacity as
Secretary of the Interior,

            Defendant.

</td><td>

Case No. 1:26-cv-01348-RBW

</td></tr>
</table>

**STATEMENT OF POINTS OF LAW AND
AUTHORITY SUPPORTING MOTION TO INTERVENE**

THEODORE E. ROKITA
Attorney General of Indiana

James A. Barta
  Solicitor General
Betsy DeNardi
  Special Counsel of Complex Litigation
Indiana Attorney General's Office
Indiana Government Center South
302 W. Washington St., 5th Floor
Indianapolis, IN 46204
(317) 232-6201
James.Barta@atg.in.gov
Betsy.DeNardi@atg.in.gov

*Counsel for State of Indiana*

*(Additional counsel listed on signature block)*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

FACTUAL BACKGROUND ..................................................................................................... 4

ARGUMENT ............................................................................................................................. 7

I.      Intervenor States are entitled to intervention as of right under Rule 24(a) .......................... 7

        A.      The Intervenor States' motion to intervene is timely ............................................... 7

        B.      Intervenor States have cognizable interests in this case ......................................... 8

        C.      Disposition of this action may impair Intervenor States' ability to protect their
                interests ............................................................................................................. 10

        D.      The existing parties do not adequately represent the Intervenor States'
                interests ............................................................................................................. 11

II.     Alternatively, the States are entitled to permissive intervention under Rule 24(b) ........... 13

CONCLUSION ....................................................................................................................... 15

# TABLE OF AUTHORITIES

**CASES**

*Akiachak Native Community v. U.S. Dep't of Interior*,
584 F.Supp.2d 1 (D.D.C. 2008) ...............................................................................8, 12

*Amador Cnty., Cal. v. U.S. Dep't of the Interior*,
772 F.3d 901 (D.C. Cir. 2014) .........................................................................................8

*Bragg v. W. Va. Coal Ass'n*,
248 F.3d 275 (4th Cir. 2001) ...........................................................................................9

*Earthworks v. U.S. Dep't of Interior*,
2010 WL 3063143 (D.D.C. 2010) ...............................................................................3, 12

*Jacobson v. Detzner*,
2018 WL 10509488 (N.D. Fla. July 1, 2018) ...............................................................14

*Nat. Res. Def. Council v. Costle*,
561 F.2d 904 (D.C. Cir. 1977) ......................................................................................10

*Nat'l Ass'n for Advancement of Colored People v. New York*,
413 U.S. 345 (1973) .......................................................................................................13

*Nuesse v. Camp*,
385 F.2d 694 (D.C. Cir. 1967) ........................................................................................8

*In re Permanent Surface Mining Regul. Litig.*,
617 F.2d at 808 ................................................................................................................4

*In re Permanent Surface Mining Regul. Litig.*,
653 F.2d 516 (D.C. Cir. 1981) (en banc) ..................................................1, 3, 8, 11

*Roane v. Leonhart*,
741 F.3d 147 (D.C. Cir. 2014) ........................................................................................8

*Sec. Ins. Co. of Hartford v. Schipporeit, Inc.*,
69 F.3d 1377 (7th Cir. 1995) .........................................................................................15

*State of Indiana, et al. v. Doug Burgum, et al.*,
U.S. District Court for the District of Columbia, Cause No. 1:24-cv-01665 ...........2, 9, 10, 14

*Thomas v. Andino*,
335 F.R.D. 364 (D.S.C. 2020) .......................................................................................14

*Trbovich v. United Mine Workers of Am.*,
404 U.S. 528 (1972) ..................................................................................................11, 12

CASES [CONT'D]

*Ungar v. Arafat*,
634 F.3d 46 (1st Cir. 2011)..............................................................................................14

*Wildearth Guardians v. Salazar*,
272 F.R.D. 4 (D.D.C. 2010).........................................................................................9, 12

*Wineries of the Old Mission Peninsula Ass'n v. Township of Peninsula, Mich.*,
41 F.4th 767 (6th Cir. 2022) ...........................................................................................12

STATUTES, REGULATIONS AND RULES

30 U.S.C. § 1201(f)..............................................................................................1, 10, 15

30 U.S.C. § 1253(a) ................................................................................................ *passim*

30 U.S.C. §1271(a) .............................................................................................................9

30 U.S.C. § 1271(a)(1)..........................................................................................1, 4, 5, 6

30 U.S.C. § 1271(b) ......................................................................................................4, 11

30 U.S.C. § 1276(a)(1).......................................................................................................7

42 U.S.C. § 4331................................................................................................................13

85 Fed. Reg. 75150 (Nov. 24, 2020).................................................................................5

85 Fed. Reg. 75151 (Nov. 24, 2020).................................................................................5

88 Fed. Reg. 24944 (Apr. 25, 2023) .................................................................................5

89 Fed. Reg. 24714 (Apr. 9, 2024) ...................................................................................5

89 Fed. Reg. at 24715 ........................................................................................................5

89 Fed. Reg. at 24717 ........................................................................................................6

89 Fed. Reg. at 24717–18 ..................................................................................................6

90 Fed. Reg. 25174 (Jun. 16, 2025)...............................................................................2, 6

91 Fed. Reg. 7835 (Feb. 19, 2026) ...............................................................................1, 6

91 Fed. Reg. 7836 (Feb. 19, 2026) ...................................................................................9

91 Fed. Reg. at 7836 ..........................................................................................................9

**STATUTES, REGULATIONS AND RULES [CONT'D]**

91 Fed. Reg. at 7839 ..............................................................................................................12

Fed. R. Civ. P. 24(a) ..................................................................................................2, 7, 13

Fed. R. Civ. P. 24(b) ......................................................................................................3, 13

Fed. R. Civ. P. 24(c) ............................................................................................................7

**OTHER AUTHORITIES**

7C Wright & Miller, *Federal Practice and Procedure* § 1908 ........................................10

**INTRODUCTION**

The State of Indiana and ten other States[1], collectively "Intervenor States," move to intervene as Defendants in this matter to ensure their primacy related to coal mining operations in their respective states is safeguarded. The Surface Mining Control and Reclamation Act of 1977 ("SMCRA" or "Act") expressly recognizes that States should assume "primary governmental responsibility for developing, authorizing, issuing, and enforcing regulations for surface mining and reclamation" due to "the diversity in terrain, climate, biologic, chemical, and other physical conditions in areas subject to mining operations." 30 U.S.C. § 1201(f); *see In re Permanent Surface Mining Regul. Litig.*, 653 F.2d 516, 519 (D.C. Cir. 1981) (en banc) ("As long as the state properly enforces its approved program, it is the exclusive 'on the scene' regulatory authority."). SMCRA authorizes the Secretary of the Interior to issue a notice—called a ten-day notice—to State regulatory authorities when the Secretary has reason to believe that a "person" is violating the Act. 30 U.S.C. § 1271(a)(1).

On February 19, 2026, the Department of the Interior and the Office of Surface Mining Reclamation and Enforcement ("OSMRE") announced they were "rescinding the 'Ten-Day Notices and Corrective Action for State Regulatory Program Issues' rule" from 2024 ("2024 Rule") and "replacing it, in large part with the rule titled, 'Clarification of Provisions Related to the Issuance of Ten-Day Notices to State Regulatory Authorities and Enhancement of Corrective Action for State Regulatory Program Issues'" previously adopted in 2020 ("2020 Rule"). ("2026 Rule") 91 Fed. Reg. 7835 (Feb. 19, 2026). Plaintiffs-Petitioners claim that the return to the 2020 Rule is arbitrary, capricious, and inconsistent with the law in violation of SMCRA, the Administrative Procedure Act, and the National Environmental Policy Act. Intervenor States,

---

[1] The intervenor states are: Indiana, Alabama, Alabama Surface Mining Commission, Alaska, Arkansas, Kentucky, Montana, North Dakota, Texas, Utah, West Virginia, and Wyoming

1

however, previously challenged the 2024 Rule because it upended the federal-state balance Congress created when it passed SMCRA. *See State of Indiana, et al. v. Doug Burgum, et al.*, U.S. District Court for the District of Columbia, Cause No. 1:24-cv-01665. Intervenor States oppose Plaintiffs-Petitioners' attempt to reinstate regulations that do not comport with SMCRA and result in curtailing the States' authority and imposing inflexible, arbitrary deadlines.

Returning to the 2020 Rule will "streamline the process for OSMRE's coordination with State regulatory authorities" and "recognize that State regulatory authorities are the primary regulatory authorities of non-Federal, non-Indian lands within their borders." Recission of the "Ten-Day Notices and Correction Action for State Regulatory Program Issues" Rule, Issued April 9, 2024, 90 Fed. Reg. 25174 (Jun. 16, 2025). The 2026 Rule restores ten-day notices to their intended purpose: addressing site-specific violations by permittees. This is critical for Intervenor States that must respond to ten-day notices issued by the Secretary and the valuable time and resources that would be expended if expansive ten-day notices not contemplated by the Act are issued by the federal government. The entirety of the 2024 Rule's changes transformed the federal-state relationship in a way that was contrary to the Act. The 2026 Rule restores the appropriate balance between the federal and State regulators returning the State regulators to primary jurisdiction over coal mining in their jurisdictions. Intervenor States have an interest in ensuring that this balance is protected.

Intervenor States are entitled to intervene as of right in this case. Fed. R. Civ. P. 24(a). This case is in its early stages, so the Intervenor States' motion is timely. The Intervenor States have concrete and protected interests in the SMCRA regulations because they have primary responsibility over surface coal mining operations in their jurisdictions. The Intervenor States have a concrete interest in ensuring that the federal-state balance created by Congress in SMCRA is

maintained. Plaintiffs-Petitioners' lawsuit could impair these interests by requiring the federal government to return to the 2024 Rule that impermissibly expanded federal authority and created unlawful requirements for Intervenor States to follow. The Intervenor States are not adequately represented by the federal government under this case's particular circumstances. The Intervenor States have a strong interest in defending the 2026 Rule because the States with federally approved programs—like Intervenor States—assume "exclusive jurisdiction" over nearly all aspects of surface coal mining and reclamation. 30 U.S.C. § 1253(a). *See In re Permanent Surface Mining Regul. Litig.*, 653 F.2d at 523 (State regulatory authorities "exercise[] front-line supervision."). Therefore, the Intervenor States are likely to adopt different strategies in defending the 2026 Rule. *See Earthworks v. U.S. Dep't of Interior*, 2010 WL 3063143, *2 (D.D.C. 2010) (Permitting Alaska to intervene in case involving mining rights because "Alaska's interests in the natural resources within state borders and the economic effects on the state of mining regulation are not necessarily represented by federal agencies or private companies.").

Alternatively, the Court should grant permissive intervention. Fed. R. Civ. P. 24(b). The Intervenor States' participation will not prejudice any existing party. To the contrary, the Intervenor States' participation would benefit the Court by providing a unique perspective not represented by any existing party. As explained above, Intervenor States have primary responsibility or exclusive jurisdiction over surface coal mining and reclamation in their states. No other party in this lawsuit would have the perspective of the primary regulator subject to the 2026 Rule. The Court would benefit from hearing that perspective.

The Court should grant intervention as of right. Alternatively, permissive intervention is warranted.

**FACTUAL BACKGROUND**

The SMCRA reflects a "truly federalist" approach to mining regulation. *In re Permanent Surface Mining Regul. Litig.*, 617 F.2d at 808. Once a state program earns federal approval, state jurisdiction becomes "exclusive" over virtually all aspects of surface coal mining and reclamation. 30 U.S.C. § 1253(a). The Secretary's role is limited, and the Act outlines the circumstances under which he may intervene.

Section 521(a) provides that, "[w]henever, on the basis of any information available to him, including receipt of information from any person, the Secretary has reason to believe that any person is in violation of any requirement of this chapter or any permit condition required by this chapter, the Secretary shall notify the State regulatory authority." 30 U.S.C. § 1271(a)(1). Within ten days of receiving the notice, the State regulatory authority must either "take appropriate action to cause said violation to be corrected or to show good cause for such failure and transmit notification of its action to the Secretary." *Id*. If the State regulatory authority discharges its obligations under Section 521(a) in response to a notice, then the Secretary's role is at an end.

Section 521(b) provides a different procedure for situations in which the Secretary "has reason to believe that the violations of all or any part of an approved State program result from a failure of the State to enforce such State program or any part thereof effectively." 30 U.S.C. § 1271(b). In that situation, the Secretary must provide public notice and notice to the State, and then hold a hearing "in the State within thirty days." *Id*. If the Secretary finds after the hearing "that there are violations and such violations result from a failure of the State to enforce all or any part of the State program effectively, and if he further finds that the State has not adequately demonstrated its capability and intent to enforce such State program," Section 521(b) directs the Secretary to take over responsibility for issuing permits and enforcing them. *Id.*

4

In 2020, the Secretary promulgated a rule summarizing and clarifying the agency's stance. The 2020 Rule, which took effect on December 24, 2020, provided a "Clarification of Distinction Between OSMRE Enforcement Actions under §1271(a) and (b)." 85 Fed. Reg. 75150, 75151 (Nov. 24, 2020). In the 2020 Rule, the Secretary recognized that "Congress differentiated these site-specific enforcement actions" under Section 521(a) and "the type of actions that OSMRE may take under the State regulatory program enforcement provisions" of Section 521(b). *Id.* at 75150. The 2020 Rule also continued to "strongly encourage" citizens to report a potential violation to the State regulatory authority before reporting said violation to OSMRE. *Id.* at 75157. The 2020 Rule directed OSMRE to consider "all readily available information," including information from State regulatory authorities, when investigating a possible violation. *Id.* at 75158. The 2020 Rule also clarified what would constitute "appropriate action" for responding to a potential violation and "good cause" for failing to do so under Section 521(a). 30 U.S.C. § 1271(a)(1).

In April 2023, the Secretary proposed an overhaul of regulations relating to ten-day notices. 88 Fed. Reg. 24944 (Apr. 25, 2023). The Secretary ultimately adopted nearly all provisions of the proposed rule a year later. 89 Fed. Reg. 24714 (Apr. 9, 2024). The 2024 Final Rule made several significant changes to ten-day notices.

First, the 2024 Final Rule revised what is considered a "violation" for the purpose of issuing a ten-day notice. The Final Rule now empowers the Secretary to issue a ten-day notice "for any possible violation," while "treat[ing] all violations the same, regardless of their genesis." 89 Fed. Reg. at 24715.

Second, the 2024 Final Rule restricted the information OSMRE may consider in deciding whether to issue a ten-day notice. The Act permits consideration of "any available information" in

5

deter-mining whether there is reason to believe a violation is occurring and the issuance of a ten-day notice is warranted. 30 U.S.C. § 1271(a)(1).

Third, the 2024 Final Rule removed the requirement that citizens must first notify State regulatory authorities of a potential violation before filing a complaint with OSMRE. 89 Fed. Reg. at 24717–18. Although the 2024 Final Rule recognizes that State regulatory authorities "should be more acquainted with conditions on the ground" and are "typically in the best position to quickly deter-mine and, if necessary, act on the merits of a citizen complaint, citizens are nonetheless permitted to bypass State regulatory authorities and proceed directly to federal intervention. *Id.* at 24718.

Fourth, the 2024 Final Rule removed the States' flexibility in responding to ten-day notices and imposes rigid deadlines. The 2024 Final Rule allows that a State may show "good cause" for failing to redress a suspected violation within ten days by requesting additional time to investigate the complaint. 89 Fed. Reg. at 24717.

On June 16, 2025, the Secretary proposed rescinding the 2024 Rule and largely returning to the 2020 Rule. 90 Fed. Reg. 25174 (Jun. 16, 2025). The Secretary ultimately moved forward with rescinding the 2024 Rule and returning to the 2020 Rule earlier this year. 91 Fed. Reg. 7835 (Feb. 19, 2026). The Secretary acknowledged the 2026 Rule made "some minor modifications to the 2020 Rule to further streamline the process for OSM's coordination with State regulatory authorities, minimize duplication of efforts . . ., and appropriately recognize that State regulatory authorities are the primary regulatory authorities for non-Federal, non-Indian lands within their borders." *Id*.

6

**ARGUMENT**

The 2026 Rule was promulgated on February 19, 2026, and Plaintiffs-Petitioners filed a Petition for Review and Complaint as contemplated by 30 U.S.C. § 1276(a)(1). *See* Dkt. 1. As of this filing, Defendant has not answered or moved to dismiss Plaintiffs-Petitioners' petition. With this action still in the early stages, Intervenor States now move to intervene as Defendants and attach a proposed answer to the petition. Fed. R. Civ. P. 24(c).

The Court should grant the Intervenor States intervention as of right because they satisfy all four requirements of Federal Rule of Civil Procedure 24(a). This litigation will impact the Intervenor States' surface mining and reclamation programs—programs over which the Intervenor States maintain "exclusive jurisdiction." 30 U.S.C. § 1253(a). At a minimum, the Court should grant permissive intervention under Rule 24(b). The Intervenor States offer a unique perspective regarding the harms, benefits, and effects of the 2026 Rule on their regulatory programs, and the Court would benefit from having that view represented in the litigation.

**I.      Intervenor States are entitled to intervention as of right under Rule 24(a).**

A movant is entitled to intervene as of right if the movant (1) files a "timely motion," (2) "claims an interest" in the litigation, (3) "may as a practical matter" be "impair[ed]" or impede[d]" by the disposition of the suit, and (4)  is not "adequately represent[ed]" by the parties in the case. Fed. R. Civ. P. 24(a). The Intervenor States meet all four requirements, and thus have a right to intervene.

**A.  The Intervenor States' motion to intervene is timely.**

The Intervenor States are moving to intervene while this action is in its infancy, making their motion timely. The test of timeliness requires consideration of "all the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the purpose for

7

which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case." *Amador Cnty., Cal. v. U.S. Dep't of the Interior*, 772 F.3d 901, 903 (D.C. Cir. 2014) (internal quotation omitted). The "requirement of timeliness is aimed primarily at preventing potential intervenors from unduly disrupting litigation, to the unfair detriment of the existing parties." *Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014).

These factors support the timeliness of the Intervenor States' motion. The States filed their Motion to Intervene within five weeks after Plaintiffs-Petitioners filed their complaint, before any litigation of the issues commenced. To date, no responsive pleading has been filed. No other motions or briefs have been filed. The case has not progressed in any way, so no existing party could claim an "unfair detriment." *Id.*

### B. Intervenor States have cognizable interests in this case.

Intervenor States have an interest in litigation over regulations that govern their State regulatory programs and their interactions with the Secretary regarding the programs. This "requirement serves 'primarily [as] a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.'" *Akiachak Native Community v. U.S. Dep't of Interior*, 584 F.Supp.2d 1, 6 (D.D.C. 2008) (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)).

Intervenor States have "*exclusive* jurisdiction" over nearly all aspects of surface coal mining and reclamation. 30 U.S.C. § 1253(a) (emphasis added); *see In re Permanent Surface Mining Regul. Litig.*, 653 F.2d at 519 ("As long as the state properly enforces its approved program, it is the exclusive 'on the scene' regulatory authority."). The Act provides for federal regulation

8

"only if a particular State wishes to forego or fails to assume its primary responsibility for regulating surface mining operations within its boundaries." S. Rep. No. 94-28, at 204 (1975).

The 2026 Rule's decision to return in large part to the 2020 Rule will allow for better "coordination with State regulatory authorities to ensure that the goals of SMCRA are achieved while granting the appropriate deference to State regulatory authorities under this cooperative federalism statute." 91 Fed. Reg. 7836 (Feb. 19, 2026). The "deference" that SMCRA extends to States is "extraordinary" and "unparalleled." *Bragg v. W. Va. Coal Ass'n*, 248 F.3d 275, 293 (4th Cir. 2001). Intervenor States have an interest in ensuring that ten-day notices are issued pursuant to the Act as the State regulatory agencies are responsible for surface coal mining and reclamation and will receive, review, and respond to the ten-day notices and any potential violations. 30 U.S.C. §1271(a). Intervenor States have previously expressed an interest in these regulations by challenging the 2024 Rule and the Plaintiffs-Petitioners were permitted by the court to intervene in that mattter. *See State of Indiana, et al. v. Doug Burgum, et al.*, U.S. District Court for the District of Columbia, Cause No. 1:24-cv-01665. A comment supporting the notice of proposed rulemaking for the 2026 Rule was also submitted by Intervenor States. *See* Letter from States re: Notice of Proposed Rulemaking – Recission of the "Ten-Day Notices and Corrective Action for State Regulatory Program Issues" Rule, Issued April 9, 2024, submitted on July 16, 2025; attached as Exhibit A. In promulgating the 2026 Rule, the Secretary acknowledged the States had provided information "detailing the alleged harms to their *interests*" in their challenge to the 2024 Rule. 91 Fed. Reg. at 7836 (emphasis added).

Intervenor States also have "an interest in . . . ensuring that the development of coal mining operations within [their] territory continues in a safe and environmentally responsible manner." *Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 18 (D.D.C. 2010) (granting motion to intervene for

9

Wyoming in action regarding leasing public lands for coal mining operations). Congress recognized when passing SMCRA that States should assume "primary governmental responsibility for developing authorizing, issuing, and enforcing regulations for surface mining and reclamation" due to "the diversity in terrain, climate, biologic, chemical, and other physical conditions in areas subject to mining operations." 30 U.S.C. § 1201(f).

These interests warrant intervention as of right in this case.

**C. Disposition of this action may impair Intervenor States' ability to protect their interests.**

Plaintiffs-Petitioners' actions could impair the Intervenor States' interests. Rule 24(a)'s impairment inquiry is not demanding.

"[I]n determining whether disposition of the action will impede or impair the applicant's ability to protect his interest the question must be put in practical terms rather than in legal terms." *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 910–11 (D.C. Cir. 1977) (quoting 7C Wright & Miller, *Federal Practice and Procedure* § 1908, at 301). The requirement is satisfied whenever disposition of the present action would put the applicant at a practical disadvantage in protecting his interest. 7C Wright & Miller, *Federal Practice and Procedure* § 1908 at 302 (2d ed. 1986). This practical approach reflects the understanding that intervention should be available when real-world consequences threaten an applicant's ability to protect their interests, regardless of whether formal legal barriers exist. *See id.*

The inquiry is straightforward. If Plaintiffs-Petitioners succeed in vacating the 2026 Rule, then the 2024 Rule would be in place. The exact Rule that Intervenor States challenged as being arbitrary, capricious, and contrary to law. *See State of Indiana, et al. v. Doug Burgum, et al.*, U.S. District Court for the District of Columbia, Cause No. 1:24-cv-01665. This change puts Intervenor States in the position of being harmed by the 2024 Rule's removal of States' flexibility in

10

responding to ten-day notices, permitting citizens to bypass State regulatory authorities and proceed directly to federal intervention, and impermissibly expanding the potential violations that are subject to a ten-day notice to include State regulatory program issues that were traditionally addressed through 30 U.S.C. § 1271(b). These changes will harm the State regulatory programs in Intervenor States potentially leading to the need for additional or varied resources.

### D.  The existing parties do not adequately represent the Intervenor States' interests.

Rule 24(a)'s final requirement, inadequacy of representation, imposes a "minimal" burden on prospective interveners. Movants need only show that that representation of their interests "'may be' inadequate" and "the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 (1972) (quotation omitted). Even where litigants share the same ultimate outcome in the case, "they may not always dictate precisely the same approach to the conduct of the litigation," causing a party's adequacy to be inadequate. *Id.* at 539.

Here, the Intervenor States' interests as separate sovereigns are distinct from those of the federal government, making it quite likely they would not take "precisely the same approach to the conduct of the litigation." *Trbovich*, 404 U.S. at 528. Intervenor States as sovereigns must make decisions regarding their State regulatory program and the land subject to surface coal mining and reclamation. The State regulatory authorities, not the federal government are responsible as "the exclusive 'on the scene' regulatory authority." *In re Permanent Surface Mining Regul. Litig.*, 653 F.2d at 519. Intervenor States are charged with responding to the ten-day notices that are the subject of the 2026 Rule and will be focused on how the Rule impacts the State regulatory agencies in their jurisdictions, whereas the federal government's interests are distinct. In a similar situation the Court concluded other defendants may not "afford the same primacy to Wyoming's interest in, for

instance, maintaining its unique role in regulation coal mining operations and environmental quality." *Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 20 (D.D.C. 2010); *see also Earthworks v. U.S. Dep't of Interior*, 2010 WL 3063143, * 2 (D.D.C. 2010) ("Alaska's interests in the natural resources within state borders and the economic effects on the state mining regulation are not necessarily represented by federal agencies or private companies" when determining that a state's interests "may not be adequately represented."); *Akiachak Native Community v. U.S. Dep't of Interior*, 584 F.Supp.2d 1, 7 (D.D.C. 2008) (determining federal defendants "have no clear interest in protecting Alaska's sovereignty . . . that would ensure adequate representation.").

Intervenor States might make different strategic choices in defending the 2026 Rule because the Intervenor States are primarily responsible for regulation of surface coal mining and reclamation activities in their jurisdictions Intervenor States will vigorously defend their "exclusive jurisdiction" over surface coal mining in their jurisdictions. 30 U.S.C. § 1253(a). The Intervenor States "have better site-specific information about the surface coal mining and reclamation operations" in their states. 91 Fed. Reg. at 7839. The federal government, by contrast, may focus more on federal authority relating to SMCRA. Thus, the federal government and Intervenor may disagree on some aspects of the 2026 Rule. Consequently, the Intervenor States and federal government are therefore unlikely to share "the same approach to the conduct of the litigation," *Trbovich*, 404 U.S. at 539, and will likely be "animated by different, and possibly conflicting, concerns," *Wineries of the Old Mission Peninsula Ass'n v. Township of Peninsula, Mich.*, 41 F.4th 767, 774 (6th Cir. 2022).

The federal government has duties relating to its defense of the 2026 Rule that differ from the interests of the States in preserving their primacy over natural resources and coal mining. The Intervenor States have sufficient grounds to intervene in this case.

For all these reasons, the Court should grant intervention as of right.

## II.    Alternatively, the States are entitled to permissive intervention under Rule 24(b).

Even if the Court disagrees on intervention as of right, the Court should still grant permissive intervention under Rule 24(b). The Court may grant permissive intervention "[o]n timely motion" when the movant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). Moreover, in exercising its discretion under Rule 24(b), "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id.* These factors all point in favor of permissive intervention here.

First, the States' motion is timely. Courts consider the same factors when assessing timeliness under Rule 24(b) as under Rule 24(a). *See, e.g.*, *Nat'l Ass'n for Advancement of Colored People v. New York,* 413 U.S. 345, 365 (1973) ("Whether intervention be claimed of right or as permissive, it is at once apparent, from the initial words of both Rule 24(a) and Rule 24(b), that the application must be 'timely.'"). As noted above, the Intervenor States moved to intervene before Defendants answered Plaintiff-Petitioners' pleading and before any administrative record is filed or briefing schedule has been determined. Thus, no party will suffer prejudice due to the States' intervention.

Second, Intervenor States will raise defenses that share many common questions with the claims and defenses of the parties. Plaintiffs-Petitioners allege the 2026 Rule violates SMCRA and the Administrative Procedure Act, 5 U.S.C. § 705 *et seq.*, because it is arbitrary, capricious, and inconsistent with the law and the Secretary failed to conduct an environmental analysis in accordance with the National Environmental Policy Act, 42 U.S.C. § 4331 *et seq.* Intervenor States reject those allegations and intend to argue that, the 2026 Rule which largely returns to the 2020

13

Rule comports with the text and intent of SMCRA by returning the federal government to its limited oversight role in issuing ten-day notices to State regulatory authorities for potential on-site violations. And an environmental analysis was not needed in promulgating a rule related to the issuance of notices for potential violations at sites that are under the "exclusive jurisdiction" of state regulatory agencies. 30 U.S.C. § 1253(a).

Third, allowing the States to intervene will neither delay this litigation nor prejudice anyone. This case remains in its infancy, so the Intervenor States' participation in it cannot prejudice any existing party or cause any delay. And to avoid any doubt, the Intervenor States pledge to adhere to any briefing deadlines the Court chooses to set. *See Thomas v. Andino*, 335 F.R.D. 364, 371 (D.S.C. 2020) (finding no prejudice or delay based on such a commitment). Moreover, granting intervention will further the adversarial process and promote judicial economy by avoiding piecemeal, protracted litigation, and the possibility of conflicting legal decisions. *See Jacobson v. Detzner*, 2018 WL 10509488, at *1 (N.D. Fla. July 1, 2018) ("[D]enying Proposed Intervenors' motion opens the door to delaying the adjudication of this case's merits for months— if not longer"); *Ungar v. Arafat*, 634 F.3d 46, 50 (1st Cir. 2011) ("An order denying a motion to intervene as of right is immediately appealable as a collateral order.").

This Court previously permitted the Plaintiffs-Petitioners in this action to intervene in the Intervening States' previous action challenging the 2024 Final Rule. *See State of Indiana, et al. v. Doug Burgum, et al.*, U.S. District Court for the District of Columbia, Cause No. 1:24-cv-01665. Intervenor States' participation is appropriate to allow the Court to benefit from the same parties as the most recent ten-day notice rule challenge.

Finally, as a practical matter, the Intervenor States will provide a critical perspective that no other party will provide: The perspective of the State regulators that have "primary

14

governmental responsibility for developing, authorizing, issuing, and enforcing regulations for surface mining and reclamation" due to "the "diversity in terrain, climate, biologic, chemical, and other physical conditions in areas subject to mining operations." 30 U.S.C. § 1201(f). Currently, no other party in this litigation will provide this viewpoint. The Court would thus benefit from intervention, which will ensure robust legal arguments contributing to a more informed judgment. Under these circumstances, the only prejudice Plaintiff-Petitioners could conceivably identify is that they may have to respond to more arguments. But again, that fact would, if anything, be a beneficial addition allowing for a more informed decision by the Court. And Plaintiff-Petitioners "can hardly be said to be prejudiced by having to prove a lawsuit [they] chose to initiate." *Sec. Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995).

## CONCLUSION

The Court should grant the Intervenor States' motion to intervene.

Respectfully Submitted,

THEODORE E. ROKITA
Attorney General of Indiana

/s/ James A. Barta
James A. Barta (DC Bar No. 1032613)
Solicitor General
Betsy DeNardi*
Special Counsel of Complex Litigation
Indiana Attorney General's Office
Indiana Government Center South
302 W. Washington St., 5th Floor
Indianapolis, IN 46204
(317) 232-6201
James.Barta@atg.in.gov
Betsy.DeNardi@atg.in.gov

*Counsel for State of Indiana*

STEVE MARSHALL
Attorney General of Alabama

/s/ Steven Shawn Sibley
Steven Shawn Sibley*
Assistant Attorney General
Office of the Attorney General
State of Alabama
501 Washington Avenue
Montgomery, AL 36130
(334) 242-7300
shawn.sibley@AlabamaAG.gov

*Counsel for State of Alabama and Alabama Surface Mining Commission*

15

STEPHEN J. COX
Attorney General of Alaska

/s/ Gilman Dana S. Burke
Gilman Dana S. Burke*
Natural Resource Section
Alaska Department of Law
1031 W. 4th Avenue, Suite 200
Anchorage, AK 99501
(907) 269-5232
dana.burke@alaska.gov

*Counsel for State of Alaska*

RUSSELL COLEMAN
Attorney General of Kentucky

/s/ John H. Heyburn
John H. Heyburn
 Principal Deputy Solicitor General
Kentucky Office of the Attorney General
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
(502) 696-5300
Jack.Heyburn@ky.gov

*Counsel for Commonwealth of Kentucky*

DREW H. WRIGLEY
Attorney General of North Dakota

/s/ Philip Axt
Philip Axt*
Solicitor General
Office of Attorney General
600 E. Boulevard Ave Dept. 125
Bismarck, ND 58505
(701) 328-2210
pjaxt@nd.gov

*Counsel for State of North Dakota*

TIM GRIFFIN
Attorney General of Arkansas

/s/ Noah P. Watson
Noah P. Watson
Deputy Solicitor General

Office of the Arkansas
Attorney General
101 West Capitol Avenue
Little Rock, Arkansas 72201
(501) 682-1019
noah.watson@arkansasag.gov

*Counsel for State of Arkansas*

AUSTIN KNUDSEN
Attorney General of Montana

/s/ Christian B. Corrigan
Christian B. Corrigan
Solicitor General
Montana Department of Justice
215 N. Sanders Helena, MT 59601
Christian.Corrigan@mt.gov

*Counsel for State of Montana*

16

**Ken Paxton**
Attorney General of Texas

**Brent Webster**
First Assistant Attorney General

**Ralph Molina**
Deputy First Assistant Attorney General

**Austin Kinghorn**
Deputy Attorney General for Civil Litigation

**Kellie E. Billings-Ray**
Chief, Environmental Protection Division

/s/ Ian Lancaster
**Ian Lancaster***
Assistant Attorney General
Office of the Attorney General
Environmental Protection Division
P.O. Box 12548 (MC59)
Austin, Texas 78711-2548
(512) 475-4003
Ian.Lancaster@oag.texas.gov

*Counsel for the State of Texas*

KEITH G. KAUTZ
ATTORNEY GENERAL

/s/ D. David DeWald
D. David DeWald*
Deputy Attorney General
Office of the Attorney General of Wyoming
109 State Capitol
Cheyenne, WY 82002
(307)777-7895
david.dewald@wyo.gov

*Counsel for Proposed Intervenor State of Wyoming*

DEREK BROWN
Attorney General of Utah

/s/ Gary T. Wight
Gary T. Wight*
Assistant Attorney General
1594 West North Temple, Suite 300
Salt Lake City, UT 84116
(801) 538-7227
gwight@agutah.gov

*Counsel for State of Utah*

JOHN B. MCCUSKEY
Attorney General of West Virginia

/s/ Michael R. Williams
Michael R. Williams
*Solicitor General*

Office of the Attorney General
of West Virginia
State Capitol Complex
Building 1, Room E-26
1900 Kanawha Blvd. E
Charleston, WV 25301
(304) 558-2021
michael.r.williams@wvago.gov

*Counsel for State of West Virginia*

* Registered per LCvR 83.2(g)

17